(No. 39820.—

C. G. GREY, Appellant, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(JAMES W. GARRISON, Appellee.)

*Opinion filed Sept. 23, 1966.—Rehearing denied Oct. 27, 1966.*

EMERSON BAETZ, of Alton, for appellant.

McGRADY AND MADDEN, of Gillespie, for appellee.

Mr. JUSTICE SOLFISBURG delivered the opinion of the court:

This is an appeal from an order of the circuit court of Macoupin County confirming an award of the Industrial Commission.

James W. Garrison, an employee of C. G. Grey, testified that on May 17, 1963, he was working as a hod carrier on a stonework project and that when he bent over and picked up a piece of cut stone a sudden pain hit him in the back; that he passed out momentarily. He thereafter sought the attention of a chiropractor who refused to treat him and referred him to a physician. The employee continued to work until December 6, 1963, when he quit work. Apparently he had hemorrhoids at the time he quit work on December 6 and the employer claims that Garrison quit work because of the hemorrhoids and not because of his back. In April, 1964, Garrison went to a hospital for a hernia operation and at that time it was determined that he had a short right leg due to a birth defect and his right shoe was built up.

The employee's treating physician, Dr. Robert English, stated that the employee came to see him May 20, 1963, three days after the injury occurred, complaining of a pain in his back. Garrison told him of the May 17 injury and that he had had similar trouble to a lesser degree some seven or eight years previously. X rays ordered by Dr. English revealed a partial sacralization of the fifth lumbar vertebrae with some narrowing of the intervertebral space between the fifth lumbar and the first sacral vertebrae. The doctor recommended that the employee obtain a back support. Dr.

English was asked if he had an opinion as to how these injuries or defects would affect Mr. Garrison's ability to work at his construction occupation, and made the following answer: "He has a congenital abnormality of his spine at the lumbosacral area which creates an unstable articulation. This unstable articulation is subject to excess or may be subject to excess straining or abnormal movement in the area which would give rise to pain and following that, muscle spasm and stiffness of the back. Ordinarily this might result from heavy lifting or bending; it is, however, not necessary that lifting be heavy. I have seen episodes follow no more than bending over to wash off a face on occasion. I would anticipate that working in construction with this sort of condition existing in the lower back could anticipate further trouble."

The employer, called by employee's counsel, testified that the employee had worked for him for approximately twelve years, was a good worker and that he, the employer, was present on May 17 when the employee hurt his back handling a piece of stone weighing 65 to 70 pounds. He further testified that the employee worked from then until December, 1963, when he "laid off;" that he had not rehired him because he did not think he could "perform enough work for me to pay his wages." He also testified that after May 17 the employee "slowed up," couldn't perform his work in the same manner he did before, and that "anything heavy he couldn't handle anymore".

The first hearing before the arbitrator was on July 20, 1964, and on November 9, 1964, a further hearing was held. The only witness to testify at the second hearing was Dr. English who was recalled. He had last seen the employee June 14, 1964.

The arbitrator awarded temporary disability to the employee from December 6, 1963, to November 9, 1964. This award was made under section 19(b) of the Workmen's Compensation Act for 48⅚ weeks' temporary disability, ex-

pressly finding (as permitted by the statute) that the employee's "disabling condition is temporary and has not yet reached a permanent condition" and holding the case open for hearing on "further  *  *  *  temporary total compensation or  *  *  *  permanent disability, or  *  *  *  further needed medical surgical (or) hospital services or drugs." (Ill. Rev. Stat. 1963, chap. 48, sec. 138.19(b).) The arbitrator's decision was affirmed by the commission and on review confirmed by the circuit court of Macoupin County.

One of the contentions of the employer is that the employee left work on December 6, 1963, not because of his back, but because of his hemorrhoids. However, after having read the testimony of the employer and the employee, both on direct and cross-examination, we conclude that it can be reasonably found that the employee left work because of his back.

Also it is contended that there is no evidence in the record that the employee's back trouble was in fact due to an injury. With this we cannot agree. There can be no question but that the employee sustained an injury while lifting a heavy stone on May 17, 1963, and that he has a bad back whether congenital or otherwise. By the employer's own testimony the employee's back became so bad after the injury that he was unable to do his regular work and that he would not rehire him.

We have repeatedly said that the determinations of disputed questions of fact, including causal connection and the extent of disability, are primarily the function of the Industrial Commission and that on judicial review these findings will not be disturbed unless they are against the manifest weight of the evidence. Such is the case here. It is noted that the employer presented no medical testimony. The contention of the employer that the commission's decision is based upon imagination and conjecture is without merit.

The disability period according to the arbitrator's findings did not begin May 17, 1963, the date of the injury, but

began December 6, 1963, seven months after the injury and following seven months of work after the injury. It is contended that this cannot constitute temporary disability under Illinois law because temporary disability exists only from the time of the injury until the employee is as fairly and nearly restored to health as the permanent character of the injury itself will permit. There is language in several Illinois cases to the effect that this period is a temporary period immediately after the accident during which the injured employee is totally incapacitated by reason of the illness attending the injury. (*Western Cartridge Co.* v. *Industrial Com.* 357 Ill. 29, *Consolidated Coal Co. of St. Louis* v. *Industrial Com.* 311 Ill. 61, *Mt. Olive Coal Co.* v. *Industrial Com.* 295 Ill. 429.) However, a reading of those cases reveals that the factual situations therein presented were entirely different from that presented here and it was not necessary for the court in those cases to decide that the temporary disability exists only from the time of injury. Here, the testimony of the employee is that after injuring his back he kept working and was trying to "go with it," but it got to "where I couldn't make the grade". He said he worked five or six months before it got where he couldn't go on with the job. The evidence is ample that the employee tried to work after the accident and the employer paid him for seven months thereafter. Under the circumstances here present we do not think that the employee should be denied compensation because he attempted to work as long as he could after the date of the injury. Such a decision would be manifestly unfair.

Since we think the evidence is sufficient to establish a total temporary disability resulting from his injury, we do not consider it significant that the employee also chose this time of disability to have a hernia operation.

There is, however, no evidence of the employee's inability to work between July 20, 1964, the date of the first

hearing before the arbitrator, and November 9, 1964, the date of the second hearing before the arbitrator. The employee did not testify at the second hearing and the only witness was Dr. English who stated that he had not seen the employee since the July hearing. Therefore the contention of the employer that the award of temporary disability could not possibly run to November 9, 1964, is sound, the only evidence in the record being that he was disabled to the date of the first hearing on July 20, 1964. For this reason the decision of the circuit court of Macoupin County is reversed and the cause remanded to affirm the award insofar as it allows temporary disability up to July 20 and set aside the award after that date.

*Affirmed in part and reversed in part and remanded, with directions.*