THOMAS J. EVERT, JR., Petitioner-Appellant, v. BOARD OF TRUSTEES OF THE FIRE FIGHTERS' PENSION FUND OF THE CITY OF LAKE FOREST *et al.*, Respondents-Appellees.

Second District   No. 2—88—0693

Opinion filed March 10, 1989.

Peter T. Shovlain, of Collins, Jutila & Shovlain, of Waukegan, for appellant.

Thomas F. McGuire and John H. Kelly, both of Thomas F. McGuire & Associates, Ltd., of Long Grove, for appellees.

JUSTICE McLAREN delivered the opinion of the court:

Claimant, Thomas J. Evert, Jr., a fire fighter, brought an action to recover disability pension benefits pursuant to the "line-of-duty" provisions of the Illinois Pension Code (the Code) (Ill. Rev. Stat. 1987, ch. 108½, par. 4—110). After administrative hearings before

the Board of Trustees of the Fire Fighters' Pension Fund of the City of Lake Forest, Illinois (the Board), claimant was denied a "line-of-duty" disability pension, but was granted a "not-in-duty" disability pension pursuant to section 4—111 of the Code (Ill. Rev. Stat. 1987, ch. 108½, par. 4—111). After administrative review, the circuit court of Lake County entered an order on June 27, 1988, confirming the decision of the Board. Claimant appeals, contending that the Board's decision was against the manifest weight of the evidence. We affirm.

On January 21, 1987, while employed by the City of Lake Forest, claimant, a 49-year-old fire fighter and emergency medical technician, injured his lower back while lifting an accident victim on a stretcher at Lake Forest Hospital. On the date of his injury, claimant filed an injury report with his employer. He did not seek medical attention at that time. On the date of his injury, claimant's duties required that he attend a training session in La Salle, Illinois. While in class at the training session, claimant's lower back symptoms progressively worsened so that he missed some of the training. Upon returning home, he contacted his family physician, Dr. Maurice B. Pickard. Dr. Pickard prescribed a back brace and then referred Evert to Dr. Burt E. Schell, an orthopedic surgeon.

Dr. Schell examined Evert approximately two weeks after his injury. In order to determine the nature and degree of the suspected pinched nerve, Dr. Schell obtained a computerized tomography scan. After an unsuccessful 10- to 12-week physical therapy program, a myelogram was taken; based on the probability of a disc herniation, Dr. Schell, on July 10, 1987, performed surgery on Evert's lower back. The surgery consisted of a hemilaminectomy and nerve root decompression at the L4-L5 level. Dr. Schell found Evert medically unable to return to work as a fire fighter. Dr. Pickard was of the opinion that Evert could not perform heavy duties necessary to the paramedic profession or to fire fighting. Dr. Ronald Pawl, another physician and neurologist whom Evert had consulted, was of a similar opinion. He believed that Evert was capable of returning to occupational activities not requiring repeated bending, lifting, or twisting.

On December 15, 1987, Evert filed for a "line-of-duty" disability pension. At the administrative hearing conducted on January 27, 1988, Dr. Schell testified that he was absolutely certain that the specific lifting incident of January 21, 1987, aggravated plaintiff's preexisting, degenerative condition in the lower back. That condition consisted of disc degeneration and bony spurring. When asked if this type of incident was inevitable, he could not say that it was. When asked whether Evert could ever work as a fire fighter, Dr. Schell

stated that it was unpredictable when his back would give out again and that his condition might jeopardize others. Prior to the lifting injury sustained on January 21, 1987, Evert claimed that he was performing his duties as a fire fighter and emergency medical technician duties without restriction on a daily basis, without experiencing any lower back problems; he stated that he was not under any active medical care for his existing, degenerative condition in the lower back. Evert became aware of lower back pain in 1984. Upon further questioning by the Board, Evert stated that he had prior, work-related injuries. In one instance, Evert was hit in the back of the neck by a falling chandelier during a fire. He had corrective surgery for a cervical spine condition. Evert had been employed as a fire fighter by the City of Lake Forest for over 19 years.

After the administrative hearings, the Board, on February 4, 1988, found that while Evert's condition was such as to disable him from the performance of his duties as a fire fighter, such a condition was due to degenerative changes in his lower back rather than due to the performance of his duties as a fire fighter. However, the Board awarded Evert a "not-in-duty" disability pension pursuant to section 4—111 of the Code.

█ A "line-of-duty" disability pension provides for the payment of 65% of an individual's salary, while a "not-in-duty" pension pays 50% of such salary. (Ill. Rev. Stat. 1987, ch. 108½, pars. 4—110, 4—111.) Fire fighters are required to contribute a small percentage of their salary toward the cost of their pension. Ill. Rev. Stat. 1987, ch. 108½, par. 4—118.1.

Claimant's prior, degenerative condition in his lower back is not disputed. The central issue on appeal is whether the Board erred in finding that claimant's disability was due to the degenerative changes in his lower back and not due to the performance of his duties as a fire fighter. More specifically, the issue is whether it was against the manifest weight of the evidence for the Board to find that the lifting injury did not aggravate a preexisting physical condition, thereby barring claimant from a "line-of-duty" pension.

█ It is well established that the provisions governing police and firemen's pensions must be liberally construed in favor of the applicant. (*Olson v. City of Wheaton Police Pension Board* (1987), 153 Ill. App. 3d 595, 598.) In *Olson*, this court determined that evidence of a preexisting physical disability does not bar a "line-of-duty" disability pension where it can be shown that a claimant's disability was caused by an "act of duty" which aggravated his preexisting condition.

██ ▌ The findings of an administrative agency on questions of fact are *prima facie* true and correct, and a reviewing court may set aside such findings only if they are against the manifest weight of the evidence. (*Ernzen v. Board of Trustees of Batavia Firemen's Pension Fund* (1981), 96 Ill. App. 3d 1143, 1147.) A judgment is against the manifest weight of the evidence when it appears from the record that an opposite conclusion is clearly evident. The decision of the Board will be reversed only where it is against the manifest weight of the evidence or it is without substantial foundation in the record. (*Ernzen*, 96 Ill. App. 3d at 1148.) To make such a finding, a court must conclude that all reasonable and unbiased persons, acting within the limits prescribed by the law and drawing all inferences in support of the finding, would agree that the finding is erroneous and the opposite conclusion is clearly evident. (*Hahn v. Police Pension Fund* (1985), 138 Ill. App. 3d 206, 209.) It is not sufficient that there are mere conflicts in the testimony or that an opposite conclusion might be reasonable; since the weight of the evidence and the credibility of the witnesses are within the province of the agency, there need be only some competent evidence in the record to support its findings. *Hahn*, 138 Ill. App. 3d at 209.

Section 4—110 of the Code providing for "line-of-duty" pension benefits states in pertinent part:

"If a firefighter [*sic*], as the result of sickness, accident or injury incurred in or resulting from the performance of an act of duty or from the cumulative effects of acts of duty, is found, pursuant to Section 4—112, to be physically or mentally permanently disabled for service in the fire department, so as to render necessary his or her being placed on disability pension, the firefighter [*sic*] shall be entitled to a disability pension of 65% of the monthly salary attached to the rank held by him or her in the fire department at the date he or she is removed from the municipality's fire department payroll." Ill. Rev. Stat. 1987, ch. 108½, par. 4—110.

By contrast, the "not-in-duty" disability pension provisions state:

"A firefighter [*sic*] having at least 7 years of creditable service who becomes disabled as a result of any cause other than an act of duty, and who is found, pursuant to Section 4—112, to be physically or mentally permanently disabled so as to render necessary his or her being placed on disability pension, shall be granted a disability pension of 50% of the monthly salary attached to the rank held by the firefighter [*sic*] in the fire service at the date he or she is removed from the municipal-

ity's fire department payroll." Ill. Rev. Stat. 1987, ch. 108½, par. 4—111.

The evidence in this case consisted of the testimony of the claimant, the testimony of his treating physician, Dr. Schell, and the reports of Drs. Schell, Pickard and Pawl. The reports of all three doctors attributed Evert's disability to a degenerative condition in his lower back. Dr. Pickard characterized Evert's condition as a chronic source of pain since 1984. Dr. Pawl stated that the claimant had recovered nicely from the surgeries. Neither Dr. Pickard nor Dr. Pawl went so far as to attribute claimant's physical condition to the lifting injury. However, Dr. Schell did unequivocally state that claimant's symptoms were aggravated at the time of the lifting injury. He stated that the degenerative process occurs over a long period of time. Nevertheless, when pressed as to whether it was the long-term degenerative process or the lifting injury that caused plaintiff's disability, Dr. Schell could not respond with certainty. Neither could he say with certainty whether the degenerative process alone would ultimately have caused Evert's disability. At the time of the lifting injury, Evert was 49 years old.

■ The claimant has the burden of proving that he was entitled to a "line-of-duty" pension, and the resolution of conflicts in the evidence is particularly within the province of the administrative agency. (*Ernzen*, 96 Ill. App. 3d at 1148.) Claimant had the burden of showing that the disability resulted from an act of duty rather than some other cause. Similarly, the Board was required to resolve any conflicts presented by the evidence. Claimant did not seek immediate medical attention. While his primary treating physician testified that the lifting injury aggravated Evert's symptoms at that time, the evidence in the record permits the inference that the aggravation was of a temporary nature and that the ongoing degenerative process was the source of claimant's disability. At best, Dr. Schell's testimony indicates that the lifting injury *may* have been a factor in the disability. The reports of the other two doctors are silent as to the aggravating effect of the injury and clearly state that Evert's disability was attributable to the degenerative condition.

■ A close review of the record compels us to conclude that claimant has not met his burden of proof. Since there is some competent evidence in the record to support the Board's findings, we cannot say that those findings are erroneous and that the opposite conclusion is clearly evident. It is not sufficient that an opposite conclusion *might* be reasonable. (See, *e.g.*, *Lawless v. Industrial Comm'n* (1983), 96 Ill. 2d 260, 264; *Burrgess v. Industrial Comm'n*

(1988), 169 Ill. App. 3d 670, 676.) Therefore, we affirm the judgment of the circuit court confirming the Board's decision.

The judgment of the circuit court of Lake County is affirmed.

Affirmed.

DUNN and LINDBERG, JJ., concur.